**PROSPECT HILL ACQUISITION LLC, Plaintiff,**

v.

**TYCO ELECTRONICS CORPORATION, Defendant.**

**No. CIV.A.03–10367–JLT.**

United States District Court, D. Massachusetts.

Aug. 10, 2004.

---

Alan J. Langton, II, Quigley, O'Connor & Carnatman LLC, Thomas N. O'Connor, Quigley, O'Connor and Carnathan, LLC, Boston, MA, for Prospect Hill Acquisition LLC, Plaintiff.

Ben T. Clements, Sullivan Weinstein & McQuay, P.C, Boston, MA, for Tyco Electronics Corporation, Defendant.

## MEMORANDUM

TAURO, District Judge.

Plaintiff Prospect Hill Acquisition ("Prospect Hill") instituted this action against Defendant Tyco Electronics Corporation ("Tyco") to recover $423,568.79 in occupancy charges, plus additional charges for rent, taxes, and operating costs, pursu-

ant to a fixed-term lease between the two Parties for a facility located in Waltham, Massachusetts. The charges represent the amount that Prospect Hill insists is owed to it under the lease's Holdover Clause.

According to the lease, Tyco was required to surrender the facility on June 21, 2002. And, the lease provides that, by the surrender date, Tyco must "remove ... any and all equipment, ducts, fixtures, materials or other property that are or might be contaminated, hazardous and/or subject to regulation by any Environmental Laws." [1] Prospect Hill maintains that Tyco breached the lease and became a holdover tenant when it failed to remove the facility's cyanide-contaminated concrete floor by the surrender date. Tyco, however, insists that it did not breach the lease and, thus, did not become a holdover tenant because the lease did not require that it remove the concrete floor.

Presently before this court are the Parties' cross-motions for summary judgment.

### Background

From 1975 to 1999, several companies owned the facility in issue.[2] During that period, the companies conducted metal plating operations in a portion of the facility. Hazardous materials, including cyanide compound solutions, were used in the metal plating operations.[3] The portion of the facility where metal plating operations were conducted had a concrete floor that was regularly exposed to the hazardous materials.[4]

In 1999, Tyco purchased the facility.[5] Tyco, like the companies that owned the

---

1. Aff. of Glen L. Foster, submitted in supp. of Tyco Elecs. Corp.'s Mot. for Summ. J. ("Tyco's Mot. for Summ. J."), Ex. 3 at 9.

2. Tyco Elecs. Corp.'s Statement of Material Facts in Supp. of Summ. J. ("Tyco's Statement of Material Facts") ¶ 1.

3. *Id.*

4. *Id.*

5. *Id.* ¶ 2.

facility before it, conducted metal plating operations in the facility and exposed the facility's concrete floor to hazardous materials.[6]

In November of 2001, Tyco entered into a purchase and sale agreement ("P & S") with Prospect Hill Executive Office Park ("PHEOP").[7] Pursuant to the P & S, Tyco agreed to sell the facility to PHEOP.[8]

On November 30, 2001, PHEOP and Prospect Hill entered into an assignment.[9] Under the assignment, PHEOP assigned its rights and obligations with regard to the P & S to Prospect Hill.[10]

The closing for the sale of the facility occurred subsequent to the assignment but also on November 30, 2001.[11] At the closing, Prospect Hill and Tyco entered into a written lease through which Prospect Hill leased the facility to Tyco for a fixed term beginning on November 30, 2001 and ending on June 21, 2002.[12]

The lease contains the following provisions in its Surrender Clause:

> *Section 1.* At the expiration or prior termination of the Term of this Lease, except as hereinafter specifically provided, [Tyco] shall surrender the Demised Premises in the same condition as existed on the Commencement Date, reasonable wear and tear and damage by fire

or other casualty excepted. Notwithstanding the foregoing, at the expiration or prior termination of the Term of this Lease, [Tyco] shall (i) remove its furniture and office equipment from the Demised Premises and its manufacturing equipment from that portion of the Demised Premises in which [Tyco's] manufacturing operations are currently located; (ii) steam clean floors, walls and other exposed surfaces and dispose of residues in accordance with applicable law in the portion of the Demised Premises in which [Tyco's] wastewater treatment equipment and manufacturing operations are currently located; (iii) leave all remaining wiring in compliance with the National Electrical Code; and (iv) remove from the Demised Premises any and all equipment, ducts, fixtures, materials or other property that are or might be contaminated, hazardous and/or subject to regulation by any Environmental Laws . . . .

> *Section 2.* All personal property and trade fixtures owned by [Tyco] shall remain the property of [Tyco] and may be removed by [Tyco] no later than the expiration of the Term hereof.[13]

The lease also contains the following Holdover Clause:

---

6. *Id.*

7. *Id.* ¶ 3.

8. *Id.* The P & S contains the following language:

> Buyer is acquiring the Premises strictly on an "as is[,]"[ ] "where is" and "with all defects" basis and without representation or warranty, express, implied or statutory, of any kind, including, without limitation, representation or warranty as to title, condition (structural, mechanical, environmental or otherwise), construction, development, income, compliance with law, habitability, tenancies, merchantability or fitness for any purpose, all of which are

hereby disclaimed and which Buyer hereby waives . . . .

> Aff. of Glen L. Foster, submitted in supp. of Tyco's Mot. for Summ. J., Ex. 1 at 5.

9. Tyco's Statement of Material Facts ¶ 6.

10. *Id.*

11. *Id.* ¶ 7.

12. Prospect Hill Acquisition LLC's Statement of Undisputed Facts and Legal Elements ("Prospect Hill's Statement of Undisputed Facts") ¶¶ 13, 32.

13. Aff. of Glen L. Foster, submitted in supp. of Tyco's Mot. for Summ. J., Ex. 3 at 9.

If [Tyco] remains in the Demised Premises beyond the expiration of this Lease, such holding over shall be without right and shall not be deemed to create any tenancy, but [Tyco] shall be a tenant at sufferance only and shall pay during such period of holdover, when and as billed therefor by Landlord, as an occupancy charge (but not as rent), an amount pro rated on a daily basis equal to three (3) times the Annual Base Rent due from [Tyco] as of the expiration of the Term, plus any charges for additional rent hereunder, and Taxes and operating costs, if any, due for such period of holdover.[14]

And, the lease states that it "constitutes the entire and only agreement between the parties relating specifically to this matter and no oral statements or representations or prior written matters not contained in this Lease shall have any force and effect."[15]

On March 29, 2002, approximately three months prior to the expiration of the term of the lease, Prospect Hill's property manager for the facility, Spaulding & Slye Colliers ("Spaulding"), sent Tyco a letter that outlined Tyco's responsibilities under the lease's Surrender Clause.[16] The letter, in fact, cited the Surrender Clause.[17]

On May 20, 2002, Prospect Hill's environmental consultant, Haley & Aldrich ("Haley"), contacted Tyco and requested that Tyco determine whether there was cyanide present in the facility's concrete floor.[18] Although Tyco did not feel that it was obligated to test the concrete floor for cyanide, it agreed to do so.[19]

On June 18, 2002, three days before the expiration of the term of the lease, Spaulding representatives met with Tyco representatives at the facility and conducted an exit walkthrough.[20] At the walkthrough, Tyco attempted to give the keys to the facility to Spaulding.[21] Spaulding, however, refused to accept them.[22] Spaulding informed Tyco that it had been instructed not to accept the keys until Tyco resolved the issue of the cyanide in the concrete floor.[23]

On July 8, 2002, Spaulding forwarded to Tyco an invoice for $156,000.00 "for [occupancy charges] through July 31, 2002 . . . at [the] 300% holdover level."[24] In a letter dated July 15, 2002 to the Realty Associates Fund III, L.P., Prospect Hill's agent, Tyco made it clear that it did not believe that it was in holdover status.[25]

In the July 15, 2002 letter, Tyco also stated that tests it had conducted revealed that the concrete floor contained trace amounts of cyanide.[26] After it received the letter, Prospect Hill requested that Tyco remove the concrete floor.[27] Prospect Hill insisted that, under the following provision in the lease's Surrender Clause, Tyco was required to remove the concrete floor: "at the expiration . . . of the Term

14. *Id.* at 17.

15. *Id.* at 18.

16. Tyco's Statement of Material Facts ¶ 17.

17. *See* Aff. of Glen L. Foster, submitted in supp. of Tyco's Mot. for Summ. J., Ex. 4.

18. Tyco's Statement of Material Facts ¶ 23.

19. *Id.* ¶ 24.

20. *Id.* ¶ 21.

21. *Id.* ¶ 25.

22. *Id.*

23. *Id.*

24. Aff. of Glen L. Foster, submitted in supp. of Tyco's Mot. for Summ. J., Ex. 7.

25. *See id.*

26. *See id.*

27. Tyco's Statement of Material Facts ¶ 31.

of this Lease, [Tyco] shall ... remove from the Demised Premises any and all equipment, ducts, fixtures, materials or other property that are or might be contaminated, hazardous and/or subject to regulation by any Environmental Laws ...."[28]

Although Tyco insisted that it was not required to remove the concrete floor, it agreed to do so.[29] The removal of the concrete floor began on September 16, 2002 and was completed on September 27, 2002.[30]

On February 26, 2003, Prospect Hill instituted this action to recover $423,568.79 in occupancy charges, plus additional charges for rent, taxes, and operating costs, under the lease's Holdover Clause. Prospect Hill claims that, from June 22, 2002 until the cyanide clean-up was complete and Tyco surrendered the facility in accordance with the lease's Surrender Clause, Tyco was a holdover tenant.

## Discussion

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and ... the moving party [has demonstrated an] entitle[ment] to a judgment as a matter of law."[31] Pursuant to this standard, the "party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[32]

Of course, "[t]he happenstance that all parties seek summary judgment neither alters the yardstick nor empowers the trial court to resolve authentic disputes anent material facts."[33] A court considering cross-motions for summary judgment "must evaluate each motion separately, being careful to draw inferences against each movant in turn."[34]

Prospect Hill contends that, because Tyco did not remove the cyanide-contaminated floor from the facility until more than three months after the lease's surrender date, Tyco breached the unambiguous language of the lease and became a holdover tenant. Prospect Hill further reasons that, as a result of its holdover status, Tyco became obligated under the lease to pay Prospect Hill occupancy charges totaling $423,568.79, plus additional charges for rent, taxes, and operating costs. Tyco,

---

28. Aff. of Glen L. Foster, submitted in supp. of Tyco's Mot. for Summ. J., Ex. 3 at 9.

29. Tyco's Statement of Material Facts ¶ 33.

30. Id. ¶ 44. Although "Prospect Hill admits that the physical removal of the concrete occurred [between September 16, 2002 and September 27, 2002]," it maintains that "[i]t was not until October 1, 2002[] that Tyco completed the approved scope of work for the removal of the cyanide[-]contaminated concrete." Prospect Hill Acquisition LLC's Resp. to Tyco Elecs. Corp.'s Statement of Material Facts in Supp. of Summ. J. ¶ 44; Prospect Hill's Statement of Undisputed Facts ¶ 23.

31. Fed.R.Civ.P. 56(c). It is established that, [i]n the lexicon of Rule 56, "genuine" connotes that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party, and "material" connotes that a contested fact has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant.
Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996).

32. Id. (internal quotations omitted) (alteration in original).

33. Griggs–Ryan v. Smith, 904 F.2d 112, 115 (1st Cir.1990).

34. Id.

however, maintains that, because the lease, by its unambiguous terms, did not require that Tyco remove the concrete floor, it neither breached the lease nor achieved the status of a holdover tenant. It, thus, takes the position that it does not owe Prospect Hill any charges under the lease's Holdover Clause.

■ The first question that this court must answer in resolving the Parties' dispute is whether the relevant portions of the lease contain any ambiguity. The determination of whether a contract is ambiguous is a question of law for the court that has significant implications.[35] If a court decides "that a contract is unambiguously worded, it typically will construe the document based upon the plain and natural meaning of the language contained therein."[36] But, "[i]f ... the contract language is ambiguous, on its face or as applied, contract meaning normally becomes a matter for the factfinder."[37] Of course, "[a]n ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other's."[38] Rather, "[c]ontract language ordinarily is considered ambiguous [only] where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken."[39]

This court believes that the relevant portions of the lease are unambiguous. It is, therefore, appropriate to resolve the Parties' dispute at the summary judgment stage.

Prospect Hill contends that Tyco, because it failed to remove the facility's cyanide-contaminated concrete floor by the surrender date, breached the unambiguous language of the lease's Surrender Clause, became a holdover tenant, and consequently, is obligated to pay charges under the lease's Holdover Clause. This court disagrees.

Section One of the lease's Surrender Clause provides that, "at the expiration ... of ... this Lease, [Tyco] shall ... remove from the Demised Premises any and all equipment, ducts, fixtures, materials or other property that are or might be contaminated, hazardous and/or subject to regulation by any Environmental Laws ...."[40] Prospect Hill insists that the facility's cyanide-contaminated concrete floor constituted "*materials or other property* that are or might be contaminated, hazardous and/or subject to regulation."[41]

■ Although the language of the above-quoted provision does not expressly define or limit the types of "materials or other property" that Tyco had to remove from the facility if "contaminated, hazardous and/or subject to regulation," this court believes that the cyanide-contaminat-

**35.** *See Lohnes v. Level 3 Communications, Inc.,* 272 F.3d 49, 53 (1st Cir.2001).

**36.** *Id.*

**37.** *Den Norske Bank v. First Nat'l Bank of Boston,* 75 F.3d 49, 52 (1st Cir.1996); *see Lohnes,* 272 F.3d at 53–54 (noting that "if the plain meaning of a contract phrase does not spring unambiguously from the page or from the context[,] then the interpretive function involves a question of fact") (internal quotations omitted).

**38.** *Bank v. Int'l Bus. Machs. Corp.,* 145 F.3d 420, 424 (1st Cir.1998) (internal quotations omitted).

**39.** *Lohnes,* 272 F.3d at 53 (internal quotations omitted).

**40.** Aff. of Glen L. Foster, submitted in supp. of Tyco's Mot. for Summ. J., Ex. 3 at 9.

**41.** *Id.* (emphasis added). The Parties do not dispute that the cyanide embedded in the concrete floor was a contaminant or a hazard within the meaning of the lease.

ed floor did not constitute "materials or other property." The lease uses the phrase "materials or other property" in a context ("equipment, ducts, fixtures, materials or other property"[42]) that makes it clear that the phrase refers only to moveable materials and moveable property. Hence, real property, such as the facility's concrete floor, cannot constitute "materials or other property."[43]

To support its argument, Prospect Hill points out that Section Two of the Surrender Clause makes specific reference to personal property ("[a]ll personal property . . . owned by [Tyco] shall remain the property of [Tyco] and may be removed by [Tyco] no later than the expiration of the Term hereof"[44]) and Section One does not.[45] Prospect Hill, therefore, concludes that the term "property," as it appears in Section One, cannot refer to personal property.[46] But, as this court has already pointed out, the phrase "materials or other property" appears in a context that establishes that it refers to moveable materials and moveable property. Prospect Hill's observation is, thus, unpersuasive.

Prospect Hill also notes that, because Section Two of the Surrender Clause requires that Tyco remove all of its personal property, there would have been no need to include in the lease the "contaminated, hazardous and/or subject to regulation" language in Section One if, in fact, the term property in Section One referred only to personal property.[47] But, Section Two does not require that Tyco remove all of its personal property. Rather, it provides that "[a]ll personal property and trade fixtures . . . *may* be removed by [Tyco] . . . ."[48] Section Two identifies the property that Tyco *may* remove while Section One identifies the property that Tyco *must* remove. And, more importantly, it has already been established that the phrase "materials or other property" in Section One refers not only to personal property but to all moveable materials and moveable property. Prospect Hill's observation is, once again, unpersuasive.

Because Tyco had no obligation to remove the cyanide-contaminated concrete floor under the lease's Surrender Clause, it did not breach the lease and become a holdover tenant when it failed to remove the floor by the lease's surrender date. Similarly, Tyco did not breach the lease and become a holdover tenant when, after the surrender date and at the insistence of Prospect Hill, it retained the keys to the

---

42. Aff. of Glen L. Foster, submitted in supp. of Tyco's Mot. for Summ. J., Ex. 3 at 9.

43. Tyco also argues that, because the Surrender Clause required it to "steam clean [the facility's] floors," *id.*, it could not have been obligated under the lease to remove the cyanide-contaminated concrete floor. *See* Tyco Elecs. Corp.'s Mem. in Opp'n to Prospect Hill's Mot. for Summ. J. & in Further Supp. of Tyco Elecs. Corp.'s Mot. for Summ. J. at 6 ("[T]he fact that the Surrender [C]lause provided for the floor to be steam-cleaned (rather than removed) indisputably demonstrates that it could not have been intended to require Tyco [] to remove the concrete floor simply because the concrete contained traces of cyanide . . . ."). Tyco's argument, however, lacks merit. According to the Surrender Clause, Tyco had an obligation to steam clean the floors under subsection (ii), and under subsection (iv), it had a *separate obligation* to remove contaminants. *See* Aff. of Glen L. Foster, submitted in supp. of Tyco's Mot. for Summ. J., Ex. 3 at 9.

44. *Id.*

45. *See* Prospect Hill Acquisition LLC's Opp'n to Tyco Elecs. Corp.'s Mot. for Summ. J. at 15.

46. *See id.*

47. *See* Prospect Hill Acquisition LLC's Mem. in Supp. of its Mot. for Summ. J. at 16.

48. Aff. of Glen L. Foster, submitted in supp. of Tyco's Mot. for Summ. J., Ex. 3 at 9. (emphasis added).

facility and removed the contaminated floor.[49]

## Conclusion

For the foregoing reasons, Tyco's motion for summary judgment is ALLOWED, and Prospect Hill's motion for summary judgment is DENIED.[50]

AN ORDER WILL ISSUE.

---

**49.** The fact that Tyco ultimately removed the cyanide-contaminated concrete floor at its own expense is irrelevant to this court's legal analysis.

**50.** In view of the way in which the Parties' dispute has been resolved, it is unnecessary for this court to address the following arguments that Tyco articulated in supports of its motion for summary judgment: (1) even if Tyco was required to remove the concrete floor, the fact that it removed the floor after the surrender date did not render it a holdover tenant, (2) the charges set forth in the lease's Holdover Clause represent an unenforceable penalty, and (3) the Surrender Clause must be interpreted in conjunction with the P & S, and according to the P & S, the facility was purchased from Tyco "as is" and with no environmental warranties.